# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
# CHARLESTON DIVISION

DAVID L. MABRY,

      Plaintiff,

v.                                           Case No. 2:19-cv-00424

BETSY JIVIDEN, *et al.*,

      Defendants.

## PROPOSED FINDINGS AND RECOMMENDATION

This matter, which is assigned to the Honorable Thomas E. Johnston, Chief United States District Judge, and referred to the undersigned United States Magistrate Judge for submission of proposed findings and recommendations for disposition, pursuant to 28 U.S.C. § 636(b)(1)(B), is before the court for screening of Plaintiff's complaint (ECF No. 2) pursuant to 28 U.S.C. §§ 1915A and 1915(e)(2)(B).

    *I.*    *FACTUAL BACKGROUND AND RELEVANT PROCEDURAL HISTORY*

Plaintiff's complaint names the following Defendants: (1) Betsy Jividen, the Commissioner of the West Virginia Division of Corrections and Rehabilitation; (2) Donnie Ames, the Superintendent of the Mount Olive Correctional Complex ("MOCC"); (3) Abbie Hart, a Trustee Clerk at MOCC; (4) Correctional Officer Two David Ewing; (5) Sergeant Donald Slack; (6) Correctional Counselor One Timothy Forren; (7) Wexford Health Sources, Inc. ("Wexford"), the contracted medical provider at MOCC; (8) Dr. Charles Lye, a doctor employed by Wexford; (9) Captain Brian Penick; and (10) Correctional Officer Two Russell Parker, Jr.

The complaint alleges that, on or about March 22-23, 2019, Plaintiff suffered several seizures while incarcerated in Stewart Hall at MOCC. Plaintiff alleges that he woke up on the floor of Cell #119 in urine and vomit. He claims that he saw an unidentified correctional officer outside his cell and asked for medical assistance but was told to "get back in bed" and "you'll be alright." (ECF No. 4 at 4). Plaintiff contends he had a second seizure and awoke to hear inmates in the day room. He alleges that he walked out to the officer's post to seek help and an unidentified officer ordered him back to his cell. (*Id.* at 9). A short time later, Correctional Officers David Ewing ("Ewing") and Donald Slack ("Slack") came to his cell and escorted him to the medical unit. (*Id.*) Plaintiff claims that Ewing and Slack accused him of doing drugs. (*Id.*)

After arriving at the medical unit, Plaintiff was taken to the Charleston Area Medical Center ("CAMC") where he was treated by outside medical personnel. Plaintiff was returned to MOCC on March 23, 2019, with instructions to return to the hospital if he had further problems. (*Id.* at 5). Plaintiff claims that he suffered another seizure the following day and was not returned to the hospital. (*Id.*)

At the prison, Plaintiff was seen by Dr. Charles Lye, who allegedly accused Plaintiff of "trying to receive drugs" and stated that he was "going to red flag" Plaintiff, despite his having never had a positive drug screen while being incarcerated for over 20 years. (*Id.*) Plaintiff further claims that his wife contacted the prison and was told by "the Administration" that Plaintiff had "overdosed" on drugs. (*Id.*) However, Plaintiff further alleges that drug tests indicated there were no drugs in his system. (*Id.* at 6).

Plaintiff further alleges that, between March 23, 2019, and May 28, 2019, when he prepared the instant legal complaint, Dr. Lye refused to address his complaints of

dizzy spells and headaches and provided no further treatment to determine the cause of his seizures and instead only prescribed him Excedrin and Motrin. (*Id.* at 6).

Plaintiff has attached and described in the complaint two grievances addressing the alleged failure to provide him sufficient medical treatment. Attached as Exhibit C is Grievance No. 19-MOCC-Q2-300, filed on April 1, 2019, in which Plaintiff requested the names of staff who were involved in the alleged failure to provide him with adequate medical care on March 22-23, 2019. (ECF No. 2, Attach. 3, Ex. C). This grievance was responded to by Amber Harless (believed to be Director of Nursing), who indicated that she was requesting more information, but "there is documentation showing that [Plaintiff] was seen on 3/23 and transferred to ER." (*Id.*) This grievance was appealed to the Superintendent, Donnie Ames ("Ames"), who affirmed the response on April 12, 2019. (*Id.*) Thereafter, the grievance appeal was rejected by Commissioner Betsy Jividen ("Jividen") because Plaintiff has placed more than one grievance in an envelope, which is prohibited by the applicable grievance procedures. (*Id.*)

Also attached to the complaint as Exhibit B is Grievance No. 19-MOCC-Q2-318, which Plaintiff filed on April 6, 2019. That grievance asserted that unidentified staff refused him medical treatment for his seizures and allegedly told him they were "short on staff." (*Id.*) The undersigned is unable to identify the name of the person who responded to the grievance. However, the grievance response states, "Mr. Mabry, you were provided medical treatment when that seizure activity occurred. You were sent to the hospital." (*Id.*) This grievance was appealed to the Superintendent and Ames affirmed the response on April 16, 2019. (*Id.*) This grievance was likewise rejected by the Commissioner for sending more than one grievance per envelope. (*Id.*)

3

The complaint further alleges that, on March 23, 2019, Plaintiff was charged by "Correctional Officer #2" (who appears to be Correctional Officer Russell Parker, Jr.) ("Parker") with a disciplinary violation for insubordination/insolence, stemming from Plaintiff's statements to Parker when he was seeking assistance after his initial seizures. (*Id.* at 5). Plaintiff has attached a copy of Violation Report # 00251889 as Exhibit A to his complaint. (*Id.*, Attach. 1, Ex. A). The Violation Report suggests that Plaintiff was belligerent to Parker, who advised him to go back to his cell and then called for assistance, which is when Ewing and Slack responded. (*Id.*) Although Plaintiff provided the Violation Report indicating that Parker charged him with insubordination/insolence, the complaint fails to allege anything further about the disciplinary proceedings, including whether a hearing was held on the violation and the result of such hearing, including whether he received any sanctions as a result thereof.

The complaint further alleges that, on May 6, 2019, Plaintiff sent legal papers to Trustee Clerk Abbie Hart ("Hart") to have the Certificate section of an Application to Proceed Without Prepayment of Fees and Costs form completed and received only copies (not the originals) back two weeks later. He further contends that the copies were delivered to him by Correctional Counselor One Timothy Forren ("Forren"). Attached to the complaint as Exhibit D is Grievance No. 19-MOCC-Q1-258 in which Plaintiff complained about not receiving his legal documents for two weeks. Captain Brian Penick responded to the grievance stating that Hart advised him that "she returns forms back to the inmate the day she receives them due to their importance" and that "she does have a copy that she is sending." (*Id.*, Attach. 4, Ex. D). There is no indication that this grievance was further appealed and exhausted. (*Id.*)

It appears that Plaintiff's instant complaint (which states that it was prepared for him by another inmate) and his Application to Proceed Without Prepayment of Fees and Costs ("application"), with related documentation, were mailed from MOCC on or about May 29, 2019 and were docketed by the court on May 31, 2019 (ECF Nos. 1 and 2). Plaintiff's application was granted on June 12, 2019. (ECF No. 6). Plaintiff has had no further communication with the court since that time and no other activity has occurred in this matter. According to the West Virginia Division of Corrections and Rehabilitation ("WVDCR") website, Plaintiff is now incarcerated at the Huttonsville Correctional Center ("HCC").

## II. STANDARDS OF REVIEW

Where, as here, a prisoner is proceeding *in forma pauperis*, this court has a duty to "screen initial filings . . . to independently assess the merits of *in forma pauperis* complaints" and "exclude suits that have no arguable basis in law or fact." *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 656 (4th Cir. 2006) (citing *Nasim v. Warden*, 64 F.3d 951, 953–54 (4th Cir. 1995)); *see* 28 U.S.C. §§ 1915(e) and 1915A. The court must "dismiss a complaint filed *in forma pauperis* 'at any time if [it] determines that . . . the action or appeal . . . is frivolous or malicious . . . [or] fails to state a claim on which relief may be granted.'" *Eriline Co.*, 440 F.3d at 656 (quoting 28 U.S.C. § 1915(e)). That section also provides for dismissal where the complaint seeks monetary relief against a defendant who is immune from such relief. *See* 28 U.S.C. § 1915(e)(2)(B)(iii). A similar screening provision governs all prisoner complaints filed against government entities. 28 U.S.C. § 1915A.

Pro se complaints are held to less stringent standards than those drafted by attorneys, and the court is obliged to liberally construe such complaints. *Erickson v.*

5

*Pardus*, 551 U.S. 89, 94 (2007); *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016). Nonetheless, this liberal construction requirement does not mean that the court can ignore a clear failure in the pleading to allege facts which set forth a cognizable claim. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009) (outlining pleading requirements under Rule 8 of the Federal Rules of Civil Procedure for "all civil actions").

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests" (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007))). In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal, supra*, 556 U.S. at 679. This Court then "assume[s] the[] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [the Court] to draw on its judicial experience and common sense." *Id.*

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). A complaint that alleges enough facts "to satisfy the

elements of a cause of action created by [the relevant law]" will survive a motion to dismiss. *Id.* at 648 (quoting *McCleary-Evans*, 780 F.3d at 585).

"[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted). Moreover, a complaint must state more than "labels and conclusions" and a claim should be dismissed for failure to state a claim upon which relief can be granted if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, it does not contain "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 555, 570. The undersigned has applied these standards in the court's initial review of the allegations in Plaintiff's complaint to determine whether any of his claims should be permitted to proceed.

### III. DISCUSSION

#### A. *Claims that fail to state a claim upon which relief can be granted*

Although Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief[,]" the pleading must "give[] fair notice and state[] the elements of the claim plainly and succinctly." 2A J. Moore & J. Lucas, *Moore's Federal Practice* ¶ 8.13 at 8–111 (2d Ed. 1983). Thus, "[c]onclusionary allegations, unsupported by facts, [will be] rejected as insufficient to state a claim . . . ." *Sherman v. Yakahi*, 549 F.2d 1287, 1290 (9th Cir. 1977). A plaintiff must "allege with at least some degree of particularity overt acts which

defendants engaged in" that support each of his claims. *Id., quoting Powell v. Workmen's Comp. Bd.*, 327 F.2d 131, 137 (2d Cir. 1964).

As noted above, "[t]he liberal construction requirement [afforded to *pro se* litigants] will not permit a district court to ignore a clear failure to allege facts in his complaint which set forth a claim that is cognizable under federal law." *Adams-Bey v. Rogers*, No. 3:17-cv-210-FDW, 2018 WL 1413196, *3 (W.D.N.C. Mar. 21, 2018) (*citing Weller v. Dep't of Soc. Servs.*, 901 F.2d 387 (4th Cir. 1990)). Thus, a *pro se* complaint must still contain sufficient facts "to raise a right to relief above the speculative level" and "state a claim to relief that is plausible on its face." *Id.* This "plausibility standard requires a plaintiff to demonstrate more than a sheer possibility that a defendant has acted unlawfully." *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) (internal quotation marks omitted). Quite simply, "[d]istrict judges have no obligation to act as counsel or paralegal to pro se litigants." *Pliler v. Ford*, 542 U.S. 225 (2004).

### *Jividen and Ames*

First and foremost, Plaintiff's complaint contains <u>no allegations</u> whatsoever with respect to Defendant Jividen, beyond listing her name in the style of the case. *See, e.g., Collins v. Kibort*, 143 F.3d 331, 334 (7th Cir. 1998) ("A plaintiff cannot state a claim against a defendant by including the defendant's name in the caption."). Similarly, with respect to Defendant Ames, other than Plaintiff's allegation that he was involved in an alleged violation of Plaintiff's HIPAA rights (which is separately addressed below), the complaint is completely devoid of any specific facts concerning Ames' conduct. Therefore, even under a liberal construction, the dearth of factual allegations against Jividen and Ames warrants their dismissal under the dictates of *Twombly* and *Iqbal*.

8

At best, a very liberal interpretation of the complaint and attachments suggests that Plaintiff seeks to hold Jividen and Ames liable in their supervisory roles as Commissioner and Superintendent under a theory of *respondeat superior*, which is impermissible under § 1983. *Iqbal*, 556 U.S. at 675-76; *see also Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 691 (1978); *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (government officials may not be held vicariously liable for unconstitutional conduct of their subordinates under a theory of *respondeat superior* and must allege that each defendant's own individual actions violated the Constitution).

It is well-settled within the Fourth Circuit that, to be liable under such a theory, a supervisor, by his own conduct, must have been deliberately indifferent to, or tacitly authorized or approved, constitutional violations by his or her subordinates. *See Shaw v. Stroud*, 13 F.3d 791 (4th Cir. 1994). Such liability is not based on *respondeat superior*, but rather upon "a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care." *Id.* at 798 (*quoting Slakan v. Porter*, 737 F.2d 368 (4th Cir. 1984)).

The *Shaw* Court discussed the following elements necessary to establish a supervisor's liability under 42 U.S.C. § 1983:

> 1) The supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff; 2) The supervisor's response to that knowledge was so inadequate as to show "deliberate indifference to or tacit authorization of the alleged offensive practices;" and 3) There was an "affirmative causal link" between the supervisor's inaction and the particular constitutional injuries suffered by the plaintiff.

13 F.3d at 799. However, in *Farmer v. Brennan*, 511 U.S. 825, 832 (1994), the Supreme Court clarified that a prison official's "actual subjective awareness" of an excessive risk of harm or safety was required to hold the official liable under the Eighth Amendment. Thus, a prison official cannot be held liable for the failure to alleviate a risk that he should have perceived, but did not in fact perceive. 511 U.S. at 838. As further noted by the Fourth Circuit in *Evans v. Chalmers*:

> [T]he Supreme Court explained in *Iqbal* that "a supervisor's mere knowledge" that his subordinates are engaged in unconstitutional conduct is insufficient to give rise to liability; instead a supervisor can only be held liable for "his or her own misconduct." [556 U.S. at 677.]

703 F.3d 636, 660-61 (4th Cir. 2013). Thus, to hold a supervisory defendant, such as Jividen or Ames liable, Plaintiff must allege facts that allow the court to draw a reasonable inference that the supervisor's own conduct permitted a specific constitutional violation to occur. *Iqbal*, 556 U.S. at 677. Accordingly, "a plaintiff must plead that each [supervisory] defendant, through the official's own individual actions, has violated the Constitution." *Id*. at 676. Such allegations are absent here.

To the extent that Plaintiff may be seeking to hold Jividen and Ames liable for their roles in the grievance process, such conduct is not sufficient to give rise to liability under § 1983. *See, e.g., Larson v. Meek*, 240 F. App'x 777, 780 (10th Cir 2007) (inadequacy of allegations involving supervisory liability based on denial of grievances); *Ferris v. Jones*, No. 4:14-cv-454, 2015 WL 4668297, at *9 (N.D. Fla. Aug. 5, 2015) (granting a motion to dismiss for failure to state a claim of supervisory liability claims predicated on the denial of grievances); *Lowe v. Matheney*, No. 2:13-cv-22416, 2015 WL 5795867 *9 (S.D.W. Va. Sept. 30, 2015) (Goodwin, J.) (inadequacy of allegations involving supervisory liability claim based upon denial of grievances).

## *Claims against Hart, Forren and Penick*

Plaintiff's complaint alleges that Defendant Hart "illegally copied his legal documents, kept these legal documents, and sent him the copies and not the originals, and held them for over (2) weeks." (ECF No. 2 at 8). However, these allegations are insufficient to support any federal constitutional violation or other federal claim under § 1983. Even if this conduct somehow violated any prison policy directives, which is not specifically pled in the complaint, standing alone, that does not give rise to any federal constitutional violation by Hart. *See Aliff v. W. Va. Reg'l Jail & Corr. Facility Auth.*, No. 2:15-cv-13513, 2016 WL 5419444 at *8 (S.D.W. Va. Sept. 26, 2016) (Johnston, J.) (the violation of a prison rule or policy by prison officials does not by itself constitute a violation of the Constitution, or of a prisoner's constitutional rights.; *see also Jackson v. Sampson*, 536 F. App'x 356, 357-58 (4th Cir. 2013) (noting that a prison official's "failure to follow internal correctional policies are not actionable under § 1983 unless the alleged breach of policy rises to the level of a constitutional violation"); *Morton v. Sheeley*, No. 3:12-cv-122, 2014 WL 3700011, at *20 (N.D.W. Va. July 24, 2014) (noting that constitutional tort actions must be based on violations of federal constitutional rights, and rejecting the plaintiff's reliance on state legislative rule governing jail operations on the ground that "a failure to adhere to administrative regulations does not equate to a constitutional violation") (quoting *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993)). Plaintiff's threadbare allegations concerning Forren's role in delivering the copies of the documents and Penick's role in responding to the grievance and allegedly acknowledging Hart's practice of maintaining copies of inmate documents are, likewise, too conclusory to give rise to any plausible claims for relief against those defendants.

To the extent that Plaintiff may be claiming that the delay in providing these documents to him denied him access to the courts, that claim fails because Plaintiff has not alleged any actual injury from such delay. Plaintiff was able to timely file the instant complaint and application documents and his complaint fails to allege that any documents in other legal proceedings were not timely filed or resulted in any actual injury such as dismissal thereof. Accordingly, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's complaint fails to state any plausible claims for relief against Defendants Hart, Forren, or Penick and that the claims against those defendants should be dismissed pursuant to the dictates of *Twombly* and *Iqbal*.

### *Alleged HIPAA violation by Ames and Lye*

Plaintiff's complaint further alleges that Defendants Ames and Lye allegedly violated the Health Insurance Portability and Accountability Act ("HIPAA") by disclosing an alleged "overdose" and made statements about Plaintiff's health status to his wife. However, HIPAA does not expressly permit a private cause of action, but instead delegates enforcement authority to the Secretary of the Department of Health and Human Services, demonstrating congressional intent not to create a private remedy. *See Payne v. Taslimi*, 998 F.3d 648, 660 (4th Cir.), *cert. denied*, 142 S. Ct. 716, 211 L. Ed. 2d 403 (2021).

Moreover, every circuit court to consider whether HIPAA created a private right to sue has found that it does not. *See Payne,* 998 F.3d at 660; *see also Meadows v. United Servs., Inc.*, 963 F.3d 240, 244 (2d Cir. 2020); *Stewart v. Parkview Hosp.*, 940 F.3d 1013, 1015 (7th Cir. 2019); *Faber v. Ciox Health, LLC*, 944 F.3d 593, 596–97 (6th Cir. 2019); *Dodd v. Jones*, 623 F.3d 563, 569 (8th Cir. 2010); *Wilkerson v. Shinseki*, 606

F.3d 1256, 1267 n.4 (10th Cir. 2010); *United States v. Streich*, 560 F.3d 926, 935 (9th Cir. 2009); *Acara v. Banks*, 470 F.3d 569, 571–72 (5th Cir. 2006). Thus, Plaintiff's complaint fails to state a plausible claim for relief under HIPAA.

### *Claims against Parker, Ewing, and Slack*

The complaint also fails to state any plausible claims for relief against Defendants Parker, Ewing, and Slack. At best, Plaintiff claims that these defendants failed to respond to his requests for medical assistance for a brief period. However, the complaint and accompanying documentation indicate that, after Plaintiff came out to the officer station, Parker requested assistance, Ewing and Slack responded and ultimately escorted him to the medical unit and he was thereafter transported to CAMC for treatment. Notwithstanding Ewing and Slack's alleged verbal accusation of drug use by Plaintiff, which, standing alone, is insufficient to give rise to a valid constitutional claim, this alleged conduct is insufficient to support a finding of deliberate indifference to a serious medical need to give rise to a plausible Eighth Amendment claim against any of these defendants.

Moreover, Plaintiff's allegation that Parker charged him with a disciplinary violation for his behavior on March 23, 2019, when he claims he was having a medical emergency, is also insufficient to give rise to any federal constitutional claim. Plaintiff does not allege that he was found guilty and disciplined for this alleged violation or that he suffered any violation of due process as a result thereof. His bare allegation that "it is very clear that the plaintiff was in a very serious state of needing medical attention and this correctional officer with the competence, training, and knowledge decides to charge the plaintiff with a rule infraction" is not enough to state a plausible claim for relief.

*Claim of deliberate indifference against Dr. Lye and Wexford*

The remaining claims in the complaint are against Dr. Lye and Wexford. Because Wexford is a contracted medical provider for the State of West Virginia's correctional facilities, the deliberate indifference standard is applicable to the conduct of both Wexford and its employees, who may be considered to be acting under color of state law. *West v. Atkins*, 487 U.S. 42 (1998); *Polk Cty. v. Dodson*, 454 U.S. 312, 320 (1981); *Rodriguez v. Smithfield Packing Co., Inc.*, 338 F.3d 348, 355 (4th Cir. 2003). However, the Fourth Circuit has held that, like municipal corporations and other such public entities, "[a] private corporation is liable under § 1983 . . . [only] when an official policy or custom causes the alleged deprivation of federal rights." *Austin v. Paramount Parks, Inc.*, 195 F.3d 715, 727 (4th Cir. 1999); *see also Green v. Obsu,* No. CV ELH-19-2068, 2020 WL 758141, at *10 (D. Md. Feb. 13, 2020). Here, Plaintiff has pled no such policy or custom by Wexford. Thus, his allegations insufficiently allege the existence of a policy or custom necessary to hold Wexford liable under § 1983 and dismissal of Wexford as a defendant herein is warranted.

On the other hand, liberally construed and taken as true, Plaintiff's allegations against Lye could demonstrate that he was deliberately indifferent to Plaintiff's serious medical needs. Nevertheless, it appears that Plaintiff did not exhaust the available administrative remedies concerning his claim against Lye prior to filing the instant complaint.

Section 1997e(a) of the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), was enacted "to address concerns about the 'ever-growing number of prison condition lawsuits that were threatening to overwhelm the capacity of the federal judiciary.'" *Green v. Young*, 454 F.3d 405, 406 (4th Cir. 2006) (*quoting Anderson v.*

*XYZ Corr. Health Servs., Inc.*, 407 F.3d 674, 676 (4th Cir. 2005)). "The PLRA imposes some rather substantial limitations on a prisoner's ability to initiate a civil action." *Id.* One such limitation is the requirement that prisoners properly exhaust administrative remedies within the prison before filing a civil action. *Id.*; *see also* 42 U.S.C. § 1997e(a). "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Wells v. Parkersburg Work Release Ctr. et al.*, No. 2:15-cv-04103, 2016 WL 696680, at *3 (S.D.W. Va. Jan. 19, 2016) (citing *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006)).

Like the PLRA, the West Virginia Prison Litigation Reform Act ("WVPLRA") "require[s] inmates to exhaust their administrative remedies before they bring a lawsuit." *Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 722604, at *2 (S.D.W. Va. 2017) (citing 42 U.S.C. § 1997e(a); W. Va. Code § 25-1A-2a(i)). Under the WVPLRA, "[a]n inmate may not bring a civil action regarding an ordinary administrative remedy until the procedures promulgated by the agency have been [fully] exhausted." W. Va. Code § 25-1A-2(c).

Exhaustion of administrative remedies is an affirmative defense which generally must be raised and demonstrated by the defendants, and a plaintiff is not required to specially plead or demonstrate exhaustion in his complaint. *Jones v. Bock*, 549 U.S. 199, 216 (2007); *Moore v. Bennette*, 517 F.3d 717, 725 (4th Cir. 2008); *see also Anderson, supra*, 407 F.3d at 681 (exhaustion of administrative remedies is an affirmative defense to be raised by defendant); *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007) (the burden of proof for failure to exhaust PLRA administrative remedies lies with the defendant). Whether an administrative remedy has been exhausted for

15

purposes of the PLRA "is a question of law to be determined by the judge." *Creel v. Hudson*, No. 2:14-cv10648, 2017 WL 4004579, at *3 (S.D.W. Va. 2017) (*citing Drippe v. Tobelinski*, 604 F.3d 778, 782 (3d Cir. 2010)). If a plaintiff fails to exhaust available administrative remedies under the PLRA or WVPLRA, then the defendant is entitled to judgment as a matter of law on the corresponding claim. *See Legg v. Adkins*, No. 2:16-cv-01371, 2017 WL 72604, at *2 (S.D.W. Va. Feb. 23, 2017).

It is apparent from the grievance documents referenced and attached to Plaintiff's complaint that he did not properly exhaust those grievances. The two grievances addressing the alleged delay or denial of medical treatment for his seizures were rejected by the Commissioner's Office because Plaintiff included more than one grievance in an envelope, which is clearly prohibited and delineated as a ground for rejection in the grievance policy directive, which is made available for inmate review. In rare circumstances, a court may *sua sponte* dismiss a complaint when the alleged facts in the complaint, taken as true, prove that the inmate failed to exhaust his administrative remedies. *Custis v. Davis*, 851 F.3d 358, 361 (4th Cir. 2016). Here, it is apparent from the face of the grievance documents, which Plaintiff has made a part of the record and incorporated into his complaint, that Plaintiff failed to fully and properly exhaust his claim concerning the delay or denial of medical treatment supporting his Eighth Amendment claim against Dr. Lye. Thus, the undersigned proposes that the presiding District Judge **FIND** that Plaintiff's claim against Dr. Lye should be dismissed, pursuant to 42 U.S.C. § 1997e(a) and W. Va. Code § 29-12-A-2, for failure to fully and properly exhaust the available administrative remedies.

### IV.  RECOMMENDATIONS

For the reasons stated herein, it is respectfully **RECOMMENDED** that the presiding District Judge dismiss Plaintiff's complaint under 28 U.S.C. § 1915A and 1915(e)(2)(B) for failure to state a claim upon which relief can be granted.

Plaintiff is notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, Chief United States District Judge.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, Extension of this time period may only be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).  Copies of such objections shall be provided to Chief Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendation and to mail a copy of the same to Plaintiff.

May 3, 2022

Dwane L. Tinsley
United States Magistrate Judge